USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/22/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BYRON K. WOODARD,

    Plaintiff,

  v.

RELIANCE WORLDWIDE
CORPORATION,

    Defendant.

---

No. 18-CV-9058 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Byron Woodard brings this action for breach of contract against his former employer, Defendant Reliance Worldwide Corporation. Plaintiff alleges that Defendant breached its employment agreement with him by failing to pay him a $500,000 "special sale bonus" and a $73,125 mid-year bonus when it terminated him shortly after acquiring Plaintiff's former employer. He brings claims against Defendant for breach of contract and breach of the implied covenant of good faith and fair dealing. Before the Court is Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

On January 17, 2017, Plaintiff began working as the President of John Guest (USA), Inc., which is a subsidiary of John Guest, Ltd. Pursuant to the terms of his employment agreement (the "Agreement"), Plaintiff was to receive a $500,000 special sale bonus if John Guest sold its business and the acquirer "terminate[d] [Plaintiff's] employment with the Company (other than due to Disability or for Cause) at, or within seven (7) days immediately following, the closing of such

acquisition[.]" O'Sullivan Decl. Ex. B at ¶ 5(e). The Agreement also provided that, beginning in 2018, Plaintiff would be "eligible to receive a bonus each year[.]" *Id.* at ¶ 4(c). The Agreement specified that "[i]n order to receive a bonus, if any, [Plaintiff] must be actively employed by the Company and not under any period of notice of termination on the last day of the calendar year for which the bonus is being paid." *Id.*

Plaintiff alleges that, in December of 2017, his compensation package was revised to increase his base salary and provide for semi-annual bonus payments. On December 20, 2017, John Guest USA sent Plaintiff a letter (the "December 2017 Letter") purporting to "confirm [Plaintiff's] salary and bonus arrangements for 2018." O'Sullivan Decl. Ex. C. The letter provided Plaintiff's 2018 salary and stated that the company "[did] not agree" with Plaintiff's "ideas for how [his] bonus should be structured," which were set forth in a letter Plaintiff had provided to the company earlier that month. The December 2017 Letter then described Plaintiff's bonus structure for 2018 and referred to a one-page attachment, which set forth the details of the bonus components and metrics. A section of the attachment labeled "notes for specific awards" stated, among other things: "Semi-annual Total sales and ProLock award to be calculated as 1/3 potential total, based on H1 figures as per US budget" and "All final awards to be based on year end results." *Id.*

In early 2018, Defendant commenced negotiations to purchase John Guest, Ltd. The acquisition closed on June 12, 2018, and on that date Plaintiff became Defendant's employee.[1] On July 11, 2018—29 days after the close of the acquisition—Plaintiff was informed that he was being terminated because his position was no longer necessary. Plaintiff was further informed that

---

[1] Plaintiff has adequately alleged, for the purposes of this motion, that the Agreement became binding on Defendant after its acquisition of John Guest Ltd. *See* Compl. at ¶¶ 23 ("As a result of the acquisition, RWC became John Guest USA's successor, including in respect to the agreement."); 26, 38 (alleging that Defendant complied with the terms of the Agreement and December 2017 Letter); O'Sullivan Decl. Ex. B at ¶ 20(e) ("The Company may assign its rights and obligations under this Agreement to . . . any successor to all or substantially all of its business or assets[.]").

2

the termination would take effect on January 11, 2019. Plaintiff sought from Defendant, but did not receive, a $500,000 special sale bonus as well as a $73,125 mid-year bonus.

Plaintiff initiated this action on October 3, 2018, alleging that Defendant breached the implied covenant of good faith and fair dealing inherent in the Agreement by delaying his termination beyond the seven-day timeframe during which he would have been entitled to receive the special sale bonus. Plaintiff further alleges that Defendant breached a contractual agreement with Plaintiff by refusing to pay him a mid-year bonus for the 2018 calendar year. Defendant filed the instant motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). Where, however, "a plaintiff has relied on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint, [the Court] may consider its contents even if it is not formally incorporated by reference." *Id.* (internal quotation marks and brackets omitted). Under such circumstances, the Court "need not accept [plaintiff's] description of [the document's] terms, but may look to the [document] itself." *Id.*

## DISCUSSION

Defendant argues that the complaint should be dismissed because (1) its failure to pay Plaintiff a $500,000 special sale bonus did not constitute a breach of the implied covenant of good faith and fair dealing, and (2) its refusal to pay Plaintiff a mid-year bonus did not breach any contractual agreement between Plaintiff and Defendant. Defendant's motion is granted as to the claim for breach of the implied covenant of good faith and fair dealing, but denied as to the claim for breach of contract.

### I. Breach of the Implied Covenant of Good Faith and Fair Dealing

The parties agree that Defendant's non-payment of the special sale bonus did not breach the express terms of the Agreement, which required payment of a special sale bonus to Plaintiff only if Defendant terminated him "at, or within seven (7) days immediately following, the closing of [the] acquisition." O'Sullivan Decl. Ex. B at ¶ 5(e). Plaintiff's termination, which occurred 29 days after the close of the acquisition, fell outside this expressly negotiated time-frame. Plaintiff alleges, however, that Defendant made the decision to terminate him prior to the close of the acquisition, but intentionally delayed his termination for several weeks in a bad faith effort to deprive him of the special sale bonus. That conduct, Plaintiff argues, constitutes a breach of the implied covenant of good faith and fair dealing.

Plaintiff's argument fails because, accepting his allegations as true, Defendant's conduct did not breach of the implied covenant of good faith and fair dealing as a matter of law. Under New York law, which the parties agree governs the construction of the Agreement, "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). "This [obligation] embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Kirke La Shelle Co. v.*

4

*Armstrong Co.*, 263 N.Y. 79, 87 (1933)). "The duty of good faith and fair dealing, however, is not without limits, and no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" *Id.* (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)). Thus, "[i]n order to find a breach of the implied covenant, a party's action must directly violate an obligation that may be presumed to have been intended by the parties." *Gaia House Mezz LLC v. State St. Bank and Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) (internal quotation marks omitted).

Plaintiff argues that it can be presumed that the parties intended to require payment of a special sale bonus where, as alleged here, Defendant intentionally delayed terminating Plaintiff in order to evade its contractual obligation to pay him the bonus. Such an obligation, however, "conflict[s] with the express language of the Agreement," *id.*, which speaks not of the timing of Defendant's intentions, but rather of the timing of Plaintiff's termination. Specifically, the Agreement requires payment of the special sale bonus only if "the acquirer *terminates* [Plaintiff's] employment . . . at, or within seven (7) days immediately following, the closing of such acquisition[.]" O'Sullivan Decl. Ex. B at ¶ 5(e) (emphasis added). Given this unambiguous language, it cannot be presumed that the parties intended to impose upon Defendant an obligation to pay Plaintiff a special sale bonus if it *decided* to terminate him within the specified timeframe, but did not actually terminate him until later.

Courts that have addressed arguments similar to Plaintiff's have swiftly rejected them. For example, in *Phoenix Capital Investments LLC v. Ellington Management Group, LLC*, 859 N.Y.S.2d 46, 48 (1st Dep't 2008), the First Department affirmed the dismissal of the plaintiff's claim that the defendant breached the implied covenant of good faith and fair dealing by encouraging the delay of an investment until after the time period during which the plaintiff would

5

have been entitled to a 1% fee (the tail provision). The court explained, "Plaintiff actively negotiated the tail provision, with all its risks and benefits to both parties, and cannot nullify that provision on the basis of a bare allegation that defendant acted unfairly[.]" *Id.* To allow him to do so would "unjustifiably frustrate the expectations of the parties as made explicit in the contract" and would inappropriately permit the continuation of "an invalid substitute for [a] nonviable breach of contract claim." *Id.* Thus, the First Department concluded, "[t]he stark inconsistency between the claim and the negotiated terms of the contract require[d] that the claim be dismissed." *Id.*; *see also Butvin v. DoubleClick, Inc.*, 99-CV-4727 (JFK), 2001 WL 228121, at *9 (S.D.N.Y. Mar. 7, 2001) (rejecting claim that the defendant breached the implied covenant of good faith and fair dealing by terminating the plaintiff merely to deprive him of his stock options, because while plaintiff "might feel ill-used . . . he cannot argue that he had been deprived of anything to which he was entitled.").

The same is true here. Plaintiff, a high-level executive, negotiated the terms of the special sale provision, which expressly required payment of a special sale bonus only if he was terminated within seven days of the close of the acquisition. Since that condition never materialized, Plaintiff has not "been deprived of anything to which he was entitled," or to which he reasonably could have expected to be entitled, under the Agreement. *Id.* Defendant did not violate the implied covenant of good faith and fair dealing merely by acting in its own self-interest while also performing its express obligations under the contract. *See M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) ("[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.") (internal quotation marks omitted). To hold otherwise "would unjustifiably frustrate the expectations of the parties as made explicit in the

contract" and would violate "the well-established principle that the implied covenant of good faith and fair dealing will be enforced only to the extent it is consistent with the provisions of the contract." *Phoenix Capital Invs., LLC*, 859 N.Y.S.2d at 48. Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

## II. Breach of Contract

Defendant next moves to dismiss Plaintiff's breach of contract claim, contending that Defendant had no contractual duty to pay Plaintiff a 2018 mid-year bonus. Although it is undisputed that the Agreement itself did not entitle Plaintiff to such a bonus, Plaintiff alleges that the Agreement was subsequently modified so as to provide for the payment of a mid-year bonus in 2018. Although this motion presents a close question, the Court concludes that determining both the validity and the meaning of the alleged modification involves questions of fact that cannot be resolved at this stage. Defendant's motion with respect to this claim is, accordingly, denied.

"Plaintiff[] may state a claim for breach of contract based on a breach of terms that were not in the original contract if the contract has been modified." *Andrews v. 27 Red Music Publ'g,, LLC*, 15-CV-7544 (AJN), 2019 WL 199893, at *4 (S.D.N.Y. Jan. 15, 2019). "The modification of a contract results in the establishment of a new agreement between the parties which pro tanto supplants the affected provisions of the original agreement while leaving the balance of it intact." *Beacon Terminal Corp. v. Chemprene, Inc.*, 429 N.Y.S.2d 715, 717–18 (2d Dep't 1980). "Fundamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms." *Id.* at 718.

Here, Plaintiff alleges that, in December of 2017, his employment Agreement was modified to provide for semi-annual, rather than annual, bonus payments. He alleges that this modification was memorialized in the December 2017 Letter, which set forth Plaintiff's compensation package for the 2018 calendar year. This letter purported to "confirm" Plaintiff's "salary and bonus

7

arrangements for 2018" and referred Plaintiff to the "full salary and bonus breakdown included with [the] letter[.]" O'Sullivan Decl. Ex. C. It stated that the company was "not looking to negotiate on [the] terms" described in the letter and was signed by James Guest, the Director of International Sales & Marketing for John Guest USA. The salary and bonus breakdown included with the letter contained several charts detailing the components of Plaintiff's 2018 bonus and the metrics that would be used to calculate each component. The breakdown also listed several "notes for specific awards," including, as relevant here: "Semi-annual Total sales and Prolock award to be calculated as 1/3 potential total, based on H1 figures as per US budget" and "All final awards to be based on year end results." *Id.* Plaintiff argues that the former note memorialized the parties' mutual understanding that Plaintiff would be entitled to a semi-annual bonus for the 2018 calendar year. Defendant's refusal to pay him the mid-year bonus, Plaintiff argues, is a breach of that agreement.

Defendant contends that Plaintiff's claim must be dismissed as a matter of law, principally for two reasons. First, Defendant argues that the December 2017 Letter was not a valid modification of the Agreement. It relies on section 20(d) of the Agreement, which states that the Agreement "may be amended only by an agreement in writing signed by [Plaintiff] and an authorized representative of the Company[.]" O'Sullivan Decl. Ex. B at ¶ 20(d). Because the December 2017 Letter was signed only by the company, and not by Plaintiff, Defendant argues, the letter does not constitute a valid amendment pursuant to the Agreement's terms. Under New York law, however, if a modification is signed by the party against whom enforcement is sought, "[t]he fact that the original agreement requires that amendments or modifications be signed by *all* of the parties to the original agreement is not dispositive if the evidence, taken as a whole, shows that the amendment was authentic or was otherwise ratified by the parties' conduct." *Karel v.*

*Clark*, 514 N.Y.S.2d 766, 767 (2d Dep't 1987); *see also In re N.Y. Internet Co., Inc.*, No. 17-10326 (SHL), 2018 WL 1792235, at *8 (Bankr. S.D.N.Y. April 13, 2018); *but see BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 411–12 (S.D.N.Y. 2011) ("Where a contract provides a procedure for amending contract provisions, that procedure must be followed to execute a valid amendment."). Here, it is undisputed that the alleged modification was in writing and was signed by Defendant's predecessor. In addition, the complaint contains allegations which, accepted as true, suggest that the parties mutually assented to the modification. *See Beacon Terminal Corp.*, 429 N.Y.S.2d at 718 ("modification may be proved circumstantially by the conduct of the parties") *Kronick v. L.P. Thebault Co., Inc.*, 892 N.Y.S.2d 895, 895–96 (2d Dep't 2010) ("By remaining in the defendant's employ under the new compensation terms, the plaintiff is deemed to have accepted them, regardless of her failure to sign the notice advising her of the new terms.") (internal citations omitted). Specifically, Plaintiff alleges that he continued to work for Defendant after receiving the letter, that Defendant paid—and Plaintiff accepted—the increased salary provided for in the letter, and that Plaintiff sent Defendant a letter in July of 2018 proposing a calculation for his mid-year bonus. Whether the evidence, "taken as a whole," *Karel*, 514 N.Y.S.2d at 767, demonstrates that the December 2017 Letter was a valid and enforceable modification—despite its divergence from the procedure outlined in the Agreement—is a factual question not appropriate for resolution at this stage.

Defendant next argues that even if the December 2017 Letter constitutes a valid modification, its terms do not entitle Plaintiff to a 2018 semi-annual bonus as a matter of law. The Court disagrees. Under New York law, "agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain

meaning of its terms." *Id.* "If, [however], the contract is ambiguous, extrinsic evidence may be considered to ascertain the correct and intended meaning of a term[.]" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177–78 (2d Cir. 2004) (internal quotation marks omitted). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). "Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Eternity Global*, 375 F.3d at 178.

Here, the December 2017 Letter referred Plaintiff to the "full salary and bonus breakdown included with this letter for more detail and a full breakdown" of his "salary and bonus arrangements for 2018." O'Sullivan Decl. Ex. C. This "full breakdown" of Plaintiff's compensation package listed four components to be included in Plaintiff's bonus: "Sales (total); Sales ProLock; Trading profit; [and] Discretionary award." *Id.* It also included the following notes: "Semi-annual Total sales and ProLock award to be calculated as 1/3 potential total, based on H1 figures as per US budget" and "All final awards to be based on year end results." *Id.* Far from being unambiguous, these terms are ones "about which reasonable minds could differ." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993). The former term—"Semi-annual Total sales and ProLock award to be calculated as 1/3 potential total, based on H1 figures as per US budget"—appears to reference an "award" that is calculated in a specified manner on a semi-annual basis. It does not, however, clearly state when—if ever—Plaintiff is to receive such an award; nor does it specify any requirements for eligibility. The latter term—"All final awards to be based on year end results"—suggests that "final" awards are to be calculated annually, but it neither defines "final awards" nor expressly precludes payment of other, non-final

awards on a semi-annual basis. Given these ambiguities, the Court "has insufficient data to dismiss [the] complaint for failure to state a claim." *Eternity Global*, 375 F.3d at 178. Defendant's motion to dismiss the breach of contract claim is, therefore, denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted as to the claim for breach of the implied covenant of good faith and fair dealing, but denied as to the claim for breach of contract. No later than August 2, 2019, the parties shall submit a revised proposed case management plan, along with a joint letter advising the Court whether a referral to Magistrate Judge Netburn or to the mediation program to discuss the possibility of settlement would be productive at this time. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 11.

SO ORDERED.

Dated: July 22, 2019
New York, New York

Ronnie Abrams
United States District Judge

11